If you'd like to save time for rebuttal, you'll need to keep track of that somewhat. So with that, I wish you a cold good morning. And we'll begin arguments with United States v. Clough. Bradshaw has been submitted on the briefs. Good morning. May it please the Court and Counsel.  The first issue is whether or not the government breached the terms of its agreement with Mr. Clough not to prosecute since Mr. Clough entered into a plea agreement with the state of Washington. And the second issue is whether or not the district court erred in concluding that it didn't have discretion to depart downward for the substantial injuries received by Mr. Clough during the incident in question. As part of the issues involving the terms of the plea agreement, the government in its response has challenged that there was an agreement at all. Judge Whaley made a finding that there was an agreement, but that Mr. Clough, in fact, breached that agreement. And on reply, I replied by saying that the government, I believe, waived that issue because it did not cross-appeal. I know this Court has discretion to ---- What would they cross-appeal? The find ---- You don't appeal findings. You appeal a judgment or a conclusion. And they weren't unhappy with the conclusion, were they? No. And this ---- Don't appeal. I think the government would appeal the finding that there was an agreement because they adamantly challenged the fact that there was an agreement at the time of the motions hearing. And that would be my position. I know this Court will permit it. And it's our position that there was an agreement and that Judge Whaley erred in finding what the terms of the agreement were. What do you think the terms of the agreement were? The terms of the agreement were that Mr. Clough had to plead to something that involved the State charges, and that the ---- he had to receive either what was described by the first prosecutor as a significant sentence or, as described by both prosecutors, as a substantial sentence in State court. That there was no agreement as to what Mr. Clough had to plead to, but that he had to receive a sentence based on some sort of plea in the State court, which he did. And I think the beginning point that I would ---- where I would like to start is United States v. Fuente, 8 Fed 3rd at pages 1337 and 1338, where the panel in that case stated that if there's an ambiguity in the terms of an agreement, that you look at what the defendant reasonably understood the agreement to be. And the reason you look at what the defendant reasonably understood the agreement to be is because ambiguities are to be resolved in favor of the defendant. And in this case, what the defendant reasonably understood is contained in his affidavit in support of his motion for specific performance. That would be found at the excerpt of record at page 2 and 3, where he reasonably understood that if he entered into a plea agreement with the State of Washington, the Federal Government would not pursue Federal charges. It's further ---- his understanding is further supported by his attorney, and what his attorney understood the agreement to be. And that would be found at the excerpt of record at page 49 and 50, where his Mr. Cleff State attorney said that his understanding was, was that Mr. Cleff had to enter into some type of plea agreement to prevent Federal charges, and that no period of sentence was specified as to what he had to serve in order to fulfill his part of the agreement. At excerpts of record 51 and 52, that is the advice that he gave to his client. Mr. Webb testified at the motion hearing that he advised his client they had to plead to something in the State charges in order to avoid Federal prosecution. Also, what's evident in the affidavit of Assistant United States Attorney Lister, was that she did not specify in her affidavit that any kind of deal hinged on a specific charge. In fact, throughout her affidavit, and that would be found at the excerpt of record, I have it at page 55, but I believe that's a mistake, and she's at page four and five, and she conveyed to her Federal agent that, she told her Federal agent that, quote, I told him we would consider Federal prosecution if the State did not receive a significant sentence, and that I would contact the Assassin County prosecutors to let them know that we would consider Federal prosecution if the case was favorably resolved by the State. So the agreement that the United States attorney was contemplating was not an agreement as to what the charge was, as what Judge Whaley found in his order, but what the sentence was. In fact, that's further reflected by, in fact, well, excuse me, at excerpt of record. Are we talking about the agreement that was reached between the prosecutor and the defense attorney, or are we talking about something that was later discussed as a possibility? No, Your Honor. I'm focusing now on the initial. There was two United States attorneys assigned to this case. The first one was A. USA. Lister. And in Ms. Lister's affidavit describing her conversation with Mr. Webb, who is Mr. And that would be, quote, what the plea agreement was, wouldn't it? Yes. That would be, that would actually, yes. And there's nothing in her affidavit that states that Mr. Clough had to plead to a specific charge, but that he had to receive, quote, either a significant sentence, in another place on page 5 she says substantial sentence, and then later on in page 5 she uses the word significant sentence. The whole agreement shows that the government was looking at Mr. Clough having received a sentence, not that he pleaded to a particular charge. And that's where Judge Whaley erred, is that he found that the parties reasonably understood that Mr. Clough had to either plead to a firearm enhancement or a specific firearm charge, and not the assault that involved the firearm, in order to fill his What would the federal offense be? What was that? What would the federal offense be that they were concerned with? No assault, was it? No. They were concerned with possession of an unregistered firearm, correct. So if there's no plea to a firearm, what would the federal aspect of that whole charge be? Your Honor, the federal aspect, and I think what was in the government's mind, was that he receive a significant sentence, not what the charge was. For what? For the incident. For the incident itself. We're involved in plea bargains all the time that involve what is a person going to plead in state court and what they're going to plead to in federal court, and they don't necessarily have to plead to the federal charge in order to avoid federal prosecution. I don't think that was contemplated by the parties at all when they were discussing what the charge was, as opposed to what the sentence may be. And that's very clear in the affidavit of Ms. Lister. It's very clear in the affidavit of Mr. Winokur, which is found at page six, seven, and eight of the excerpt of the record, where Mr. Winokur spoke to Mr. Webb after the guilty plea in state court and stated that the defendant would have to receive some sort of substantial sentence and that a six-month sentence of imprisonment would not be considered a substantial sentence. So they're focusing not on what the charge was. They're focusing on what the sentence would be. And that telephonic conversation was then put down in a letter to Mr. — If you have a federal charge that relates to firearms, a firearm charge, and you have a similar charge in the state court, usually the situation is, well, if it's going to be prosecuted in the state court and there's a substantial sentence resulting from that firearm charge, then we won't prosecute. But if you're talking about an incident, that doesn't seem to me to be the basis for any plea agreement. You know, Your Honor, I think that Judge Whaley had that same battle going on. But the fact of the matter is, is that the evidence shows that it was a sentence they were concerned about and not the specific charge. It was the sentence for what? That was never — if the government had something contemplated in their mind, what it would be, that was never conveyed to Mr. Clough. And Mr. Clough reasonably understood it to mean that he had to make some sort of guilty plea in state court, regardless of the charges. There's nothing in here that ever states that we conveyed to the defendant he had to plead to a firearms charge. So thank you. Thank you, counsel. Good morning. May it please the Court, Rick Winnicker on behalf of the United States. The defendant has argued or has suggested that the United States had an issue that it failed to raise on a cross appeal with respect to the court's finding as to whether or not an agreement existed between the parties upon the resolution of the state offenses. The United States in its briefing to the court has conceded that the record exists so that though it disputes whether or not an agreement existed between the parties prior to federal prosecution being brought, but under the clearly erroneous standard that there doesn't appear to be enough facts on the record to support reversal of the district court's findings in this case. I'd like to ask you about the sentencing question. Yes, Your Honor. And it seems clear from an excerpt of Record 208 that the court believed that it was a matter of law. Why would the district court be precluded from considering that factor, which is not a forbidden factor or a discouraged factor, under the guidelines? Well, Your Honor, there's – I think it bears on a number of – this is a matter of voluntary conduct by the defendant that he engaged in. There are a number of, I would argue, detrimental impacts to engaging in criminal conduct, whatever it may be. If you're an individual working with an organized crime family, there's a great deal of stress that would come with conducting a person's criminal conduct. But there's all the way to the fear of death and assault. Let me see where that really plays into it, because it's clear that some of the results of voluntary conduct still could be considered as factors for departure. For example, if someone became a quadriplegic because of their criminal activities, that could still be taken into account in terms of their likelihood of reoffending, for example. I mean, the clearest possible place to put this is the idea that there's been punishment of a kind already for the conduct being shot by law enforcement officers, at least in as serious a way as this individual. It certainly could be viewed by a district court as a form of punishment for the conduct. What's wrong with that? Well, in this case in particular, there's also the other side of this case. We had an officer, and the United States presented testimony not only from an expert witness, but also from the officer himself. I would argue and suggest that was part of the basis of the district court's ruling, and that is that the impact of the defendant's conduct, while it did result in the defendant being shot, he wasn't the only person there at the scene. The officer was involved as well. But see, what you're saying to me sounds like arguing against the exercise of discretion, the argument that you would make to the district court about why, you know, no matter what, you shouldn't do this. But where is – I guess my problem is I don't see that as a matter of law it can't be considered, which is different from saying that there has to be a departure, but just that the court could look at it. What's wrong with having the court look at it and look at the factors that you raised along with the factors that the defendant has raised? Well, obviously, there are a number of factors in any case that a court can look at. And my argument essentially to the district court was that it should not exercise discretion in this case. Obviously, the district court did make its findings that it did not have discretion. What was the argument on the basis that the defendant made? Was it because he was injured that that should be taken into account, or was it because the police shot him and that should be taken into account? That because the police shot him, he was injured, and therefore he received punishment as a result of that on behalf of the State. The operation of the State punished him when he was shot. And my argument in response to that is, well, that's not State punishment. That is a result of the defendant's voluntary conduct, not a punitive measure of the State. For instance, if somebody is arrested, the indignity of being handcuffed and being arrested, that sort of thing, all of that isn't serving jail time. And obviously, serving incarceration is something that can be properly credited. But nevertheless, that aside, it's, again, the voluntary conduct of the defendant. Well, in short. We're about to plead the argument in the argument that the defendant makes that it's the incident that is the concern and not the firearms charge itself. Well, obviously, it would be false to say that the incident wasn't significant in consideration of the United States as to why this case came to the attention of the United States. This is an extreme incident and a very violent individual that was involved. What was the agreement? Well, it was the position of the United States, and it still is, that there was no agreement between the parties. That the United States was. Well, beyond that argument. Well. You said that the district court made that finding and it's not totally erroneous. So we're now talking about there being an agreement. What was it? Then at this stage, then it would be as the district court found, that the agreement should be whether or not the defendant dealt with the state firearms charges. He did, didn't he? I mean, no more state firearms charges. Well, they dismissed the state firearms charges. Not a way of dealing with them? Well, factually speaking, in this case, that was based on information, erroneous information. It was the position of Mr. Nichols, the state prosecutor, the certain county prosecutor, that the firearm wasn't functioning when he accepted the plea offer and they resolved the case on the eve of trial. That, in fact, turned out to be false. Well, that incorrect information may have led the state prosecutor to make a questionable judgment, but it doesn't alter the fact that the state firearms charges were dismissed, were dealt with, and removed from the table. So if the deal was simply that the charges be dealt with, and if he said they were dealt with, maybe not in a way that was satisfactory to the U.S. Attorney's Office, but they were taken off the table. Again, if the court makes that finding that they were dealt with, I would argue that, again, that wasn't a reasonable understanding between the parties. One, the questionable issue of whether or not the firearm was the position that the state prosecutor took in resolving the firearms charge. Again, was it reasonably understood between Mr. Webb, the defendant's attorney, the State's attorney, the state prosecutor, that that was actually dealing with firearms charges? And I would argue that that wasn't a reasonable understanding between the parties, between the United States and the defendant. The defendant had to do? I mean, you can't control what the state prosecutor is going to do. No, we can't. So did the defendant do something wrong that breached the agreement? Well, the defendant knew that there were Federal firearms charges in the air, so to speak. And the defendant, in this case, even if he had pled up to all the charges in State court, he would have received a less substantial sentence. The defendant instead sought and found a windfall in this case, in the State case. He received a windfall. Would the understanding of the plea agreement be that he had to plead guilty to the firearms charge in the State court? I would argue, again, at this stage, that the district court's findings that that be true, that that should be affirmed, that the record would support that, that the defendant would need to I don't understand that argument. What are you saying? Well, obviously, we're not at the point where there isn't an agreement between the parties. So we're at the point where we're looking at what the district court found, what the agreement was. My argument is that the record does support the district court's finding and that the district court's finding of what the agreement was that the defendant plead to the State firearms charges. You seem to always be going back to the fact, well, there really was no agreement. But there was certainly plenty of conversation back and forth. And the only problem, as you see it, is that it wasn't it was not finalized in some kind of an agreement. But the judge found that there was, that the conversation that occurred back and forth was some sort of an agreement. And I'm trying to understand what it is that you feel had to be done by the defendant in order to fulfill that agreement. A significant state sentence. Significant translates into what? Into something more than six months in prison. He got more than six months. I'm sorry, Your Honor? He got more than six months. Well, he received a 12-month sentence. I meant six months incarceration. And that was the conversation between all the parties. The defendant received about six months incarceration by getting a windfall on the firearms enhancement. It was essentially the firearms enhancement that would have resulted in some kind of, again, from a state perspective, more significant sentence than the windfall he received, and that was the 12-month sentence. What did the defendant do about what sentence he received? Well, again, the plea was based on, at the very least, erroneous information. But prior to the defendant being sentenced in state court, I myself made contact with the defendant and his attorney upon being assigned the case, as well as the state prosecutor, and pointed out the fact that the plea was made under, at the very least, false information. The defendant then had an opportunity to try to resolve the state firearms charges and keep the matter within the state. He chose not to. Wait a minute. Wait a minute, Your Honor. The prosecutor has made a mistake. I really am involved in a firearms charge and I should be sentenced that way? Yes, Your Honor. He should do that in the midst of the sentencing? That would be one way to approach it, or to withdraw his plea agreement. Have you ever heard of such a thing happening? Maybe not in the exact context, but I have heard, well, not between state and federal charges, but I have heard of such a similar thing happening, again, in the course of plea negotiations, revising an agreement, again, coming to a reasonable accommodation. We're not in plea negotiating. We're in state court. And the state has proceeded, and you're telling me that the defendant should have stood up and said, no, I deserve a sentence based on an enhancement of the firearms charge? In light of the facts of this case, the defendant knowing what was in the air, so to speak, the defendant understanding what he was looking at, that that would be one way to resolve it. Thank you, counsel. Thank you very much. Since you have used up extra time in response to our questions, we'll give you a minute for rebuttal. Thank you. I would like to address, first of all, the issue about the agreement and what was understood by the government as the agreement. In the brief for the appellee at page 12, the government says in its response in the first paragraph, as the defendant points out, the sentence that the defendant received on his state assault charges was the determinative factor. The government has always looked at what sentence was received as the basis of the agreement, not what specific charge was eventually pleaded to. So that's why we take the position that the terms of the agreement wasn't what specific charge was pleaded to, it was what the sentence was. And as Mr. Whitaker pointed out, he's always expressed by letter and by oral conversation with the state attorney that it had to be more than a six-month sentence. Mr. Clough did receive more than a six-month sentence. He received a 12-month sentence. Did he wind up serving more than six months on that? Yes, he did, Your Honor. And if I – this isn't part of the record, but may I go into it? I'm going to ask you to, because my understanding from the government's position now is that that was a 12-month sentence, but it amounted to something shorter. And we could supplement the record by pulling the – he was sentenced to state court less than a year or less than a year and a day, so he had to serve his time at Assault and County Jail. And under the Assault and County policies, a person sentenced to second-degree assault received 15 percent good time, but not half good time. Nor under state law. What percent? Was it 15 or 15 percent? Fifteen percent. One-five. Right. One-five percent. And also under state law, they're prohibited – I believe back in 2001. It may have changed, but I believe that back in 2001 when he was sentenced, they were prohibited from receiving more than one-third good time credit if they were sentenced to the Department of Corrections. We could pull, if you want us to, the Assault and County Jail records to show that his projected release date was more than six months. Thank you, counsel. Thank you. The case just argued is submitted. We will move next to United States v. Leon H., a juvenile male.
judges: Hug, Graber, Clifton